**UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Navneet Kaur, *on behalf of herself and all others similarly situated,*<br><br>                                        *Plaintiff,*<br><br>             -against-<br><br>Societe Air France,<br><br>                                        *Defendant.* | **RULE 23 CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Navneet Kaur ("Plaintiff" or "Kaur"), on behalf of herself and all others similarly situated (the "Class"), brings this action for damages and other legal and equitable relief against defendant Societe Air France ("Air France" or "Defendant"), upon personal knowledge as to herself and upon information and belief as to other matters, alleges as follows:

1. Plaintiff and the Class worked for Defendant as Airport Operations Associates; Passenger Service Agents; Cargo Associates; Ramp Service Agents; Mechanics; Engineers; and other positions to be identified in discovery. They performed physical labor more than 25% of the time, being paid bi-weekly instead of weekly as required by law.

2. Air France also violated the law when requiring these workers to wear a uniform, but failing to pay workers required uniform maintenance pay when the worker's hourly rate was minimum wage or close to minimum wage. Likewise Air France failed to pay required spread of hours pay to employees who worked a shift of split-shift in excess of ten hours per day while being paid a regular hourly rate that was the minimum wage or close thereto.

3. Plaintiff worked for Defendant at JFK International Airport in Queens County while performing physical tasks for the majority of her employment and being paid bi-weekly at all times.

4. Plaintiff and other "manual workers" as that term is used in the New York Labor Law ("NYLL") need to be paid weekly to keep up with day to day expenses such as housing and transportation costs, groceries, utilities, and other regular bills, and in order to obtain the full value of their earned wages as due.

5. Defendant violated the NYLL and the accompanying provisions of New York Code of Rules and Regulations ("NYCRR"), and the New York Wage Theft Prevention Act by not paying their Manual Workers on a timely and weekly basis as required, not paying them the required uniform maintenance and spread of hours pay, and by providing them with an inaccurate annual wage notice.

**PARTIES**

6. Plaintiff Navneet Kaur is an adult, over eighteen years old, a citizen of New York and resides in Suffolk County.

7. Plaintiff and the Class were, throughout their entire employment with Defendant, covered, non- exempt employees within the meaning of the NYLL. As such, Plaintiff is, and was, entitled to be paid in full for all hours worked, on a weekly basis.

8. Defendant Societe Air France is listed in New York State Department Division of Corporations ("DOS") records as a foreign business corporation with its service of process listed as 80 State Street, Albany, New York 12207. Defendant's headquarters are in France.

9. "Societe Air France" is the employer entity listed on all three of Plaintiff's W2's, with an address of 125 W 55th Street, New York, New York 10019 listed on Plaintiff's 2020 W2 and an address of 1450 Broadway 24th FL, New York, New York, 10018 listed on Plaintiff's 2021 and 2022 W2s.  Plaintiff's pay stubs simply list "Air France" as the employer entity, with an address of 1450 Broadway 24th Floor, New York, New York, 10018.

10. Defendant is considered a large employer, having at least 11 or more employees during the duration of Plaintiff's employment.

11. Defendant maintained control, oversight, and direction over Plaintiff and the proposed class in regards to timekeeping, payroll, and other employment practices, and functioned as an employer pursuant to the NYLL.

12. Defendant, by virtue of ownership, management, and control over the wages and work of Plaintiff and the proposed class, is considered an employer under the NYLL.

13. Defendant applies the same employment policies, practices, and procedures to all non-exempt workers, including policies, practices, and procedures with respect to its uniform policy and the frequency with which it paid its employees and the way in which it provided them with wage notices and periodic wage statements.

14. Defendant, by virtue of ownership, management, and control over the wages and work of Plaintiff, is considered an employer under the NYLL §190(3).

## JURISDICTION AND VENUE

15. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and the members of the proposed class are citizens of states different from that of Defendant.

16. This court also has diversity jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1). There is complete diversity of citizenship between the opposing parties since Plaintiff Kaur and other members of the class reside in New York, while Defendant is a citizen of France.

17. There are over 1000 members in the proposed class.

18. Defendant is subject to personal jurisdiction in New York as it does business in New York.

19. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts business in this District.

## FACTS

20. Defendant is an international airline with its headquarters in France which employees 38,000 people worldwide, including approximately 22,000 ground staff.

21. Defendant had approximately $25 billion in annual revenue in 2022.

22. Defendant offers the majority of its flights leaving to and from New York State out of JFK International Airport in Queens County.

23. Defendant is an employer of Plaintiff under the New York Labor Law.

24. Defendant had and continues to have the power to hire and fire the employees; supervise and control employee work schedules or conditions of employment; determine the rate and method of payment; and maintain employment records.

25. All of the below factual allegations are, upon information and belief, consistent among Plaintiff and members of the Class.

26. Plaintiff pleads the below facts to the best of her recollection and reserves the right to amend these pleadings upon receiving discovery in this matter, including payroll and employee records that Defendant is required to maintain under the New York Code of Rules and Regulations ("NYCRR").

27. Plaintiff Navneet Kaur worked for Defendant beginning in or around August 2019 until on or about March 22, 2023.

28. Plaintiff worked as a passenger service agent for the majority of her employment with Defendant until on or around October 2022 when she transferred to a new position as quote desk representative in Defendant's cargo department.

29. Plaintiff was initially paid the New York State minimum wage of $15 per hour, but was given gradual raises as the Port Authority of New York and New Jersey pressured Defendant and other airline industry employers to raise their wages, and was making approximately $18.50 per hour before transferring to work as a quote desk representative in Defendant's Cargo department.

30. As a quote desk representative, Defendant paid Plaintiff approximately $22.60 per hour.

31. Plaintiff worked full time for Defendant, and was frequently required to work overtime hours more than 40 hours per week, with work shifts as long as 18 hours.

**Untimely Pay**

32. Plaintiff's job duties as a passenger service agent included selling tickets to customers, checking in passengers, printing boarding passes, and making changes to flights. In addition, Plaintiff was required to perform physical tasks for nearly every customer while lifting and weighing their luggage, transferring their luggage to the baggage conveyor belt, and taking their tickets and checking bags as needed when she worked at the flight gates rather than at the ticketing counter.

33. Plaintiff's job role as a quote desk representative in Defendant's cargo department, a role in which she worked from October 2022 until the end of her employment in

March 2023, was primarily an office role where she was not asked to perform many physical tasks.

34. Plaintiff and the Proposed Class were paid at or near minimum wage for the majority of their employment.

35. At all times, Defendant paid Plaintiff and the Proposed Class on a bi-weekly basis.

36. Plaintiff and proposed class members spent at least 25% of the time performing physical tasks that qualify them as Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

37. Because of Defendant's improper compensation policies, Plaintiff was deprived of timely and weekly pay, in direct violation of the NYLL.

38. This pattern of conduct was continuous throughout Plaintiff's employment.

39. Defendant's unlawful conduct has been widespread, repeated, and consistent.

**Acute Injuries in Fact Sustained by Plaintiff as a result of Defendant's Conduct**

40. Plaintiff Kaur and other similarly situated Manual Workers employed by Defendant suffered actual and acute injuries as a result of Defendant's failure to pay weekly wages. The timely payment of earned wages were and are crucial to Kaur's ability to pay day to day and monthly expenses, especially due to the New York area's high cost of living. Defendant's conduct in paying Kaur's wages late throughout her employment resulted in her having to pay bills late on more than one occasion.

41. Defendant's late wage payments also deprived Kaur and other similarly situated Manual Workers of the time value of their earned money, resulting in tangible financial loss calculated as interest and in other amounts; and loss in the form of the negative impact on their

ability to save, invest, and plan for the future.  Defendant reaped billions in annual revenue from its customers as a direct result of its Manual Workers' labor while unlawfully withholding from and paying late its employees who are least able to weather these unjust delays.

**Uniform Policies**

42. All of the below factual allegations concerning uniforms are, upon information and belief, consistent among Plaintiff and all members of the Class.

43. Plaintiff was required to wear a uniform at all times while employed by Defendant.

44. As a passenger service agent, Plaintiff's uniform consisted of shirts, suit jackets, skirts, pants, shoes, and coats and boots depending on the weather.

45. The uniform bore logos and insignia unique to aviation travel and the Air France brand.

46. Defendant's uniforms, like nearly all uniforms required by airlines for their passenger service agents and flight attendants, are in Air France's corporate colors and are formal-looking in nature.  Defendant's uniforms are not in the style and type of clothing that Plaintiff and members of the proposed class would typically wear in their everyday life when not working.

47. When Plaintiff began working for Defendant, she was provided with two shirts, two suit jackets, a skirt, and shoes along with the other uniform items.

48. Defendant assigned Plaintiff and other passenger service agents a point system where they earned points towards additional uniform items on an annual basis.  However, in Plaintiff's experience, it could take Defendant as long as eight or nine months to actually deliver additional uniform items to her after she both earned and ordered them.

49. Defendant's ramp agent and cargo workers are provided with jackets bearing Defendant's logo. Defendant does not offer to wash the cargo and ramp agents' uniforms, nor pay them uniform maintenance pay.

50. During Plaintiff's employment she routinely worked 5-6 days per week.

51. Plaintiff did, in fact, wear the uniform every shift.

52. Defendant's policies that require the uniforms be clean when worn.

53. When Plaintiff began working for Defendant, Defendant offered to cover the cost of exactly one (1) dry cleaning bill.

54. In contrast to the requirements of New York State's Wage Order, despite paying Plaintiff and the class at or near minimum wage, Defendant failed to clean, or offer to clean (other than offering to cover the cost of one initial dry cleaning) their employees' uniforms and did not pay uniform maintenance costs.

55. Defendant did not launder Plaintiff's and the proposed class's required uniforms, did not offer to launder the uniforms, and instead reprimanded them if they did not bear the cost and time of cleaning and maintaining the required uniforms.

56. Plaintiff's uniforms were issued by Defendant to them for the expressed benefit of Defendant and it was a condition of Plaintiff's employment to wear them in a clean condition during each shift.

57. Defendant never paid any uniform maintenance pay or reimburse the cost of maintaining the uniform, other than for one initial drycleaning.

58. This pattern of conduct was continuous throughout Plaintiff's employment.

59. Defendant's unlawful conduct has been widespread, repeated, and consistent.

60. Upon information and belief, Defendant does not and has not maintained records of the number of uniforms provided to their employees.

**Spread of Hours Pay**

61. For long stretches of Plaintiff's employment as a passenger service agent, likely due to understaffing related to the Covid-19 pandemic and pent-up travel demand as the pandemic and it's travel restrictions were lifted, Defendant required Plaintiff to work overtime hours and long work shifts up to 18 hours in a single shift.

62. Upon information and belief, Defendant generally did pay Plaintiff the required overtime rate of time and one half for each hour that she worked each week over 40 hours.

63. However, Defendant has never paid Plaintiff or the Proposed Class the required spread of hours pay of one additional hour's pay at the applicable minimum rate for each shift that they worked in excess of ten hours.

## RULE 23 CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action on his own behalf and on behalf of all other similarly situated non-exempt employees paid on on an hourly basis who worked for Defendant in the State of New York at any time during the period commencing six years prior to the filing of this action and continuing until such further date as the practices complained of are discontinued (the Class Period")

65. The Class Period is further expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020 executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar orders, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

66. The Proposed Class is defined as:

>Named Plaintiff and all non-exempt persons employed by Air France in New York as "manual workers" and who were paid on a bi-weekly basis during the Class Period.

67. The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

68. There are more than 1000 class members and the Plaintiff's claims are typical of those other members, in that any one would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

69. Plaintiff and the Proposed Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct.

70. Defendant's corporate-wide policies and practices affected everyone who worked for Defendant's airline in the same way.

71. Plaintiff is able to fairly and adequately protect the interests of the Proposed Class and has no interests antagonistic to it.

72. Plaintiff is represented by attorneys who are experienced and competent to bring this action.

73. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

74. Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

1. What job duties are performed by the employee?

2. What was the employee's pay rate per hour?

3. What is the frequency of pay for the employee?

4. Does the employee spend at least 25% of the time at work engaged in physical labor?

5. Whether Defendant required a uniform?

6. How many of each uniform were provided?

7. How many hours per week did the employee work for purposes of determining entitlement to the "low", "middle" or "high" rate for uniform maintenance pay as per 12 NYCRR § 142-2.5?

8. Whether Defendant laundered or offered to launder the required uniforms?

9. Did the employee work more than ten hours in a given work shift?

10. Did the employee receive spread of hours pay for each day that they worked more than ten hours?

11. What were the characteristics of the annual wage notices and periodic wage statements provided to the employee?

## FIRST CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF AND THE CLASS

*Violation of the New York Labor Law – Failure to Pay Timely Wages*

75. Plaintiff re-alleges and re-avers each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

76. The timely payment of wages provisions NYLL § 191 and its supporting regulations applies to Defendant and protect Plaintiff and the Proposed Class.

77. Defendant failed to pay Plaintiff and Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

78. Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955).

79. All of Defendant's non-exempt passenger service agents, ramp agents, and cargo workers are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

80. As such, the failure to provide wages owed to Plaintiff and all others similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Associates. Contr. Mgmt.*, LLC, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

81. Defendant's conduct also constitutes an "injury in fact" suffered by Plaintiff under Article III that is within the federal judicial power because Plaintiff has "suffered an injury in fact that is concrete, particularized, and actual or imminent." *See Caul v. Petco* (infra).

82. Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant compensatory damages in an amount to be determined in this action, plus the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## SECOND CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF AND THE CLASS

*New York Uniform Maintenance Pay Class Claim*

83. Plaintiff alleges and re-alleges all of the other paragraphs contained herein.

84. Defendant required Plaintiff and the Class to wear a uniform consisting of formal, matching and corporate-color coordinated shirts, suit jackets, dresses, and other items affixed with a pin with Defendant's corporate logo.  Ramp agents were required to wear outerwear jackets emblazoned with Defendant's corporate logo.

85. Plaintiff and the Class's uniforms were issued by Defendant for the expressed benefit of Defendant and it was a condition of their employment to wear them during each shift.

86. Defendant never paid Plaintiff any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

87. Defendant did not, and did not offer, to, wash, iron, dry clean, alter, repair, or perform other maintenance necessary for Plaintiff's or the Class' required uniform.

88. Defendant did not maintain Plaintiff's or the Class' required uniform under the meaning of the New York Labor Law.

89. Defendant did not, and did not offer to, launder the required uniforms free of charge and with reasonable frequency, and did not inform Plaintiff or the Class in writing of such service.

90. Plaintiff and the Class's uniforms were issued by Defendant for the express benefit of Defendant and it was a condition of their employment to wear them during each shift.

91. Defendant never paid any uniform maintenance pay or reimbursement for the cost of maintaining uniforms, other than for a single dry cleaning.

92. Plaintiff and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendant requires.

93. Defendant never paid Plaintiff or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms in accordance with 12 N.Y.C.R.R. § 142-2.5.

94. Defendant's conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 142 the Minimum Wage Order.

### THIRD CAUSE OF ACTION

### ON BEHALF OF PLAINTIFF AND THE CLASS

*NYLL: Failure to Pay Spread of Hours Pay*

95. Plaintiff realleges and re-avers each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

96. At all relevant times, Defendant employed Plaintiff and the Proposed Class within the meaning of New York Labor Law §§ 2 and 651.

97. Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours.

98. Defendant knowingly and willfully violated the rights of Plaintiff and the Proposed Class by failing to pay them "spread of hours" premium for each day worked in excess of ten (10) hours.

99. Due to Defendant's New York Labor Law violations, Plaintiff and the Proposed Class are entitled to recover from Defendant the difference between his actual wages and the amounts he is owed under the New York Labor Law. The deficiency accounts for regular rates for all straight time hours, overtime compensations for all overtime hours, "spread of hours"

premium, prejudgment and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

## FOURTH CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF AND THE CLASS

*Violation of the New York Labor Law – Failure to Provide Wage Notice*

100. Plaintiff re-alleges and re-avers each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

101. Defendant has willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as their primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; *the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191*; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. (emphasis added)

102. Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

103. Due to Defendant's willful violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty dollars each day that Defendant failed to provide Plaintiff with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b ).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands judgment against Defendant as follows:

a. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Designation of Named Plaintiff Navneet Kaur as Class Representative and counsel of record as Class Counsel;

c. Compensatory damages in an amount to be determined in this action, including unpaid wages for uniform maintenance pay and spread of hours pay;

d. Liquidated damages in the amount of the late paid wages;

e. Liquidated damages on all unpaid wage awards;

f. An award of civil penalties for the wage notice violation;

g. Prejudgment and post-judgment interest;

h. Reasonable attorneys' fees and costs of the action on the basis of being the prevailing party in a NYLL action to recover wage underpayments; and

i. A jury trial on these issues to determine liability and damages;

j. Such other relief as this Court shall deem just and proper.

Dated:  New York, NY
        April 19, 2023

*Respectfully Submitted,*

_____
Mohammed Gangat, Esq.
LAW OFFICE OF MOHAMMED GANGAT
675 Third Avenue, Suite 1810,
New York, NY 10017
718-669-0714
mgangat@gangatpllc.com